RECORD NO. 14-4239

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## ANTHONY T. CHAMPION,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

———————————

## BRIEF OF APPELLANT

———————————

**John S. Davis, V
Daniel P. Watkins
WILLIAMS MULLEN
200 South 10th Street
Richmond, VA 23218
(804) 420-6000**

*Counsel for Appellant
Anthony T. Champion*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................ ii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUE.............................................................1

STATEMENT OF THE CASE..............................................................1

    Statement of the Facts................................................................2

SUMMARY OF ARGUMENT .............................................................7

ARGUMENT ...................................................................................8

    THE DISTRICT COURT ERRED IN DENYING MR. CHAMPION'S
    MOTION TO SUPPRESS, BECAUSE THE EVIDENCE SUPPORTED
    ONLY A SEARCH OF THE VEHICLE'S PASSENGER
    COMPARTMENT...........................................................................8

        A.    Standard of Review .........................................................8

        B.    Discussion ....................................................................8

CONCLUSION................................................................................18

STATEMENT OF WHY ORAL ARGUMENT SHOULD BE HEARD ...............18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**CASES:**

*Arizona v. Gant,*
    556 U.S. 332 (2009)................................................................14

*California v. Acevedo,*
    500 U.S. 565 (1991)...............................................................9, 14

*California v. Carney,*
    471 U.S. 386 (1985)................................................................9

*Chandler v. Miller,*
    520 U.S. 305 (1997)...............................................................10

*Illinois v. Gates,*
    462 U.S. 213 (1983)...............................................................10

*Jones v. United States,*
    357 U.S. 493 (1958)................................................................9

*Mapp v. Ohio,*
    367 U.S. 643 (1961)................................................................9

*Mincey v. Arizona,*
    437 U.S. 385 (1978)................................................................9

*Ornelas v. United States,*
    517 U.S. 690 (1996)...............................................................10

*Terry v. Ohio,*
    392 U.S. 1 (1968)..................................................................10

*United States v. Carter,*
    300 F.3d 415 (4th Cir. 2002) ................................................*passim*

ii

*United States v. Haley*,
   669 F.2d 201 (4th Cir. 1982) .........................................................................13

*United States v. Haynie*,
   637 F.2d 227 (1980) ......................................................................................11

*United States v. Holmes*,
   376 F.3d 270 (4th Cir. 2004) ...........................................................................8

*United States v. Kelly*,
   592 F.3d 586 (2010) ..........................................................................7, 15, 16

*United States v. Lynn*,
   592 F.3d 572 (4th Cir. 2010) ..................................................................15, 16

*United States v. McGee*,
   736 F.3d 263 (4th Cir. 2013) ...........................................................................8

*United States v. Ross*,
   456 U.S. 798 (1982).................................................................................10, 11, 15

*United States v. Scheetz*,
   293 F.3d 175 (4th Cir. 2002) .........................................................................12

*United States v. Teran*,
   496 F. App'x 287 (4th Cir. 2012) ..................................................................12

*Wong Sun v. United States*,
   371 U.S. 471 (1963).................................................................................9, 10

**STATUTES:**

18 U.S.C. § 922(g)(1)..................................................................................1

18 U.S.C. § 922(i) .......................................................................................1

18 U.S.C. § 922(k) ........................................................................1

18 U.S.C. § 3231 ..........................................................................1

28 U.S.C. § 1291 ..........................................................................1

Va. Code § 46.2-1054 ..................................................................3

RULES:

Fed. R. App. P. 34(a)(2) .............................................................18

Fed. R. App. P. 34(a)(2)(A) .......................................................18

Fed. R. App. P. 34(a)(2)(B) .......................................................18

Fed. R. App. P. 34(a)(2)(C) .......................................................18

CONSTITUTIONAL PROVISION:

U.S. Const. amend. IV .......................................................*passim*

## JURISDICTIONAL STATEMENT

Defendant-Appellant Anthony T. Champion ("Mr. Champion") is incarcerated at the Federal Correctional Institution in Coleman, Florida. The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231 and entered final judgment on February 18, 2014. Mr. Champion filed a timely notice of appeal on February 20, 2014, and this Court has jurisdiction over Mr. Champion's appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the police had probable cause to search the locked trunk of Mr. Champion's automobile after smelling the odor of marijuana smoke emanating from the passenger compartment.

## STATEMENT OF THE CASE

On June 5, 2013, in the Eastern District of Virginia, Mr. Champion was charged in a three-count indictment with being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count 1); transporting stolen firearms in interstate commerce, 18 U.S.C. § 922(i) (Count 2); and possessing a firearm with an obliterated serial number, 18 U.S.C. § 922(k) (Count 3). (J.A. 8-9.) Mr. Champion moved to suppress the evidence obtained against him on the ground that the police lacked probable cause to search the locked trunk of his vehicle. (J.A. 4.) After an evidentiary hearing held on September 24, 2013, the district court denied

Mr. Champion's motion and concluded that the police had probable cause to search the trunk of the car once they smelled the odor of marijuana in the passenger compartment.  (J.A. 102-9.)

On November 25, 2013, Mr. Champion entered a conditional guilty plea to Count 2 of the Indictment.  (J.A. 5.)  As part of the plea agreement, he reserved his right to appeal the court's denial of his suppression motion.  (J.A. 5.)  On February 18, 2014, the district court sentenced Mr. Champion to 120 months in prison and three years of supervised release.  (J.A. 7.)  Mr. Champion filed a timely notice of appeal.  (J.A. 110.)

### Statement of the Facts

On January 31, 2013, Virginia State Police Trooper A.B. Treakle was driving north-bound on Interstate 95 in Hanover County, Virginia, with his drug detection canine, "Duffy."  (J.A. 18, 32.)  Trooper Treakle was assigned to the Counterterrorism Criminal Interdiction Unit at the time.  (J.A. 4.)  Having served with the Drug Enforcement Agency for four years, he had also received significant training involving drug enforcement. (J.A. 49-50.)

On the same morning, Mr. Champion was driving his girlfriend's Toyota Camry in the same vicinity as Trooper Treakle. (J.A. 19.)  He was accompanied by his girlfriend, Karissa Wyatt, and their mutual friend, Gabriel Shealy, who was seated in the rear of the car with her dog.  (J.A. 29.)  At approximately 9:25 a.m.,

the Camry passed Trooper Treakle's patrol car in the left lane.  Trooper Treakle

then effected a traffic stop, purportedly because he observed two air fresheners

hanging from the Camry's rearview mirror.  (J.A. 8.)[1]  As Trooper Treakle's

vehicle came to a stop behind the Camry, Mr. Champion had already stepped out

of the Camry and was walking toward the patrol car.  (J.A. 23.)

Trooper Treakle began questioning Mr. Champion at the rear of his patrol

car and quickly determined that Mr. Champion did not have a valid driver's

license.  (J.A. 24.)  Trooper Treakle asked whether there were any illegal materials

in the Camry, and Mr. Champion replied, "Not that I know of."  (J.A. 37.)

Trooper Treakle then approached the Camry to question the two women

while two additional troopers who had arrived on the scene monitored Mr.

Champion, who was still standing behind the patrol car.  (J.A. 25.)  At

approximately 9:27 a.m., Trooper Treakle approached the driver's window of the

Camry, where Ms. Wyatt was now seated.  (J.A. 103 at 3:03.)  At the suppression

hearing, Trooper Treakle testified that he smelled a "fairly strong" odor of

marijuana emanating from the passenger compartment as he came to the window

---

[1] Trooper Treakle suspected that Mr. Champion violated Virginia Code § 46.2-1054, which prohibits drivers from operating a motor vehicle "with any object or objects, other than a rear view mirror, sun visor, or other equipment of the motor vehicle approved by the Superintendent, suspended from any part of the motor vehicle in such a manner as to obstruct the driver's clear view of the highway through the windshield."

of the Camry. (J.A. at 26.)[2] Trooper Treakle asked the women whether there were

any weapons in the Camry. (J.A. 103 at 3:16.) Both women denied that weapons

were present. (J.A. 103 at 3:18.) At this time, Trooper Treakle formed the belief

that a search of the vehicle was necessary, and he called his partner in the

interdiction unit, Trooper William Ticho, for backup. (J.A. 26-27.)

Once Trooper Ticho arrived, Trooper Treakle handcuffed Mr. Champion and

placed him in his patrol car. (J.A. 28.) Trooper Treakle then confirmed the

identities of the three detainees and checked the Camry's license plates to

determine whether it had been stolen. (J.A. 27.) While doing so, he again asked

Mr. Champion whether there were any guns in the vehicle. Mr. Champion once

more denied that there was any contraband, stating, "Nothing in there at all." (J.A.

103 at 9:48.) Trooper Treakle asked Mr. Champion where he was going, and Mr.

Champion stated that he was traveling to Boston to check on a business

investment. (J.A. 30, 103 at 9:10-20.)

At approximately 9:40 a.m., Troopers Treakle and Ticho removed Ms.

Wyatt and Ms. Shealy from the Camry. (J.A. 28, 103 at 16:48.) The troopers

frisked the women for weapons and led them to the rear of Trooper Treakle's

patrol car. (J.A. 28-29.) At 9:42 a.m., with Mr. Champion, Ms. Wyatt, and Ms.

---

[2] The Virginia State Police surveillance video and the transcript from the
suppression hearing show that Trooper Treakle stated that he smelled "a little bit of
weed." (J.A. 36, 61-62, 103 at 4:34.)

Shealy each detained away from the Camry, Trooper Treakle began to search the

right side of the Camry's passenger compartment.  (J.A. 29, 103 at 18:08.)

Trooper Treakle discovered that Ms. Sheahy's dog had defecated on the

floorboards and he testified that the smell of the feces was powerful.  (J.A. 63, 67.)

Trooper Treakle never utilized Duffy, his drug-detection canine, who remained in

the patrol car throughout the entire encounter.  (J.A. 32.)  At about the time that

Trooper Treakle finished searching one side of the passenger compartment,

Trooper Ticho approached and took the Camry's keys from Ms. Wyatt's purse,

which was in the passenger compartment.  (J.A. 45.)  At 9:46 a.m., and while

Trooper Treakle was still searching the inside of the car, Trooper Ticho unlocked

the trunk.  (J.A. 45, 103 at 22:05.)  Although he stated that he smelled marijuana

smoke only in the passenger compartment of the vehicle, Trooper Ticho explained

his reasoning for searching the trunk:

> It was particularly cold out that day. I was trying to assist Tropper
> Treakle the best I could in both the backup role and facilitating the
> search to get the search done.  My purpose for searching the trunk?
> Trooper Treakle was searching the passenger compartment, and it was
> the next logical area to search in my belief to locate the odor or the
> source of the odor that I had detected.

(J.A. 55, 62.)  As Trooper Ticho unlocked and began searching the trunk, Trooper

Treakle started to search the left side of the Camry's passenger compartment.  (J.A.

37.)  Meanwhile, Trooper Ticho discovered nine firearms in a duffel bag in the

vehicle's trunk.  (J.A. 56.)  After finding the weapons, the officers stopped their

search, and no illegal drugs or drug paraphernalia were recovered from any part of the automobile. (J.A. 31, 103 at 24:47.) The police arrested Mr. Champion, but allowed the two women to drive away in the Camry without any citations. (J.A. 63.)

Following the suppression hearing, the district court made findings of fact that (1) after handcuffing Mr. Champion, Trooper Treakle began to search the passenger compartment of the Camry; (2) while the search was going on, Ms. Wyatt told Trooper Ticho that she and her companions had been smoking "weed" while driving on the highway, and that they were headed to Washington, D.C.; and (3) after speaking with Ms. Wyatt, Trooper Ticho searched the trunk of the Camry and located a cloth bag that contained nine firearms. (J.A. 105-107.)

In its conclusions of law, the district court held that "[t]wo well-trained State Troopers, with knowledge of the smell of marijuana, report the strong odor of marijuana" in the vehicle, and that this was "corroborated by the statement of Ms. Wyatt that each of the occupants had possessed and smoked marijuana in the car while on the highway." (J.A. 108.) The court further held, "[t]he troopers have probable cause to search the trunk of the vehicle once they smell marijuana in the passenger compartment." (J.A. 108.) It reasoned that the police "had probable cause to search the vehicle to determine if there was additional marijuana in the

car. That probable cause covered the entire vehicle, including the trunk." (J.A. 109.)

## SUMMARY OF ARGUMENT

The district court wrongly concluded that the odor of marijuana smoke, in conjunction with an admission that one of the car's occupants had smoked marijuana, provided sufficient cause to search the vehicle's locked trunk. The Fourth Amendment requires a particularized finding of probable cause for each search, and on multiple occasions this Court has held that probable cause must be tailored to specific compartments and containers within an automobile. *United States v. Kelly*, 592 F.3d 586, 592 (2010); *United States v. Carter*, 300 F.3d 415, 422 (4th Cir. 2002). Here, although the district court was correct in holding that probable cause existed to search the vehicle's passenger compartment, it erred in concluding that the police officers were justified in searching the locked trunk of the car. No facts in the record provided probable cause that contraband would be found in the trunk of Mr. Champion's car.

# ARGUMENT

## THE DISTRICT COURT ERRED IN DENYING MR. CHAMPION'S MOTION TO SUPPRESS, BECAUSE THE EVIDENCE SUPPORTED ONLY A SEARCH OF THE VEHICLE'S PASSENGER COMPARTMENT.

### A.     Standard of Review

Warrantless searches are presumptively unreasonable, and the burden is on the government to prove that an exception to the warrant requirement applies. *See United States v. Holmes*, 376 F.3d 270, 274-75 (4th Cir. 2004). When considering a district court's ruling on a motion to suppress, this Court reviews the district court's legal conclusions *de novo*, and its factual determinations are reviewed for clear error. *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013).

### B.     Discussion

In this case, the legal question the officers faced was whether the odor of marijuana smoke emanating from the passenger compartment provided probable cause to search the trunk. The answer to that legal question was no, not without probable cause to believe that contraband was located in the trunk. The Fourth Amendment requires each of two simultaneous but distinct intrusions to be supported by probable cause. In failing to enforce this constitutional protection, the district court erred, and the contraband recovered from Mr. Champion's trunk should have been excluded.

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., AMEND. IV. Warrantless intrusions to personal property are presumed unreasonable, and the exclusionary rule requires suppression of evidence seized during illegal searches, subject to only a few, well-delineated exceptions. *See California v. Acevedo*, 500 U.S. 565, 580 (1991); *Wong Sun v. United States*, 371 U.S. 471 (1963); *Mapp v. Ohio*, 367 U.S. 643 (1961).

Exceptions to the warrant requirement have been "jealously and carefully drawn." *Jones v. United States*, 357 U.S. 493, 499 (1958). Accordingly, warrantless searches are prohibited unless the "exigencies of the situation" require officers to take immediate action. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). Such exigencies are typically present in the context of automobile searches due to the inherent mobility of cars, and the danger that contraband inside a car may disappear if police are required to obtain a warrant prior to searching it. *See California v. Carney*, 471 U.S. 386, 390-91 (1985). Thus, a judicially created "automobile exception" allows police to search a vehicle without a warrant if officers have probable cause that the vehicle contains evidence of illegal activity. *Id.* at 392.

Despite this exception, the Fourth Amendment continues to restrain government actors from undertaking a search or seizure without individualized suspicion. *Chandler v. Miller*, 520 U.S. 305, 308 (1997). Police must have objective, particularized evidence and probable cause to support a search. *See Terry v. Ohio*, 392 U.S. 1, 21 n.18 (1968). Probable cause exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Put differently, probable cause exists when the facts and circumstances known to government agents seeking to conduct a search are "sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Wong Sun*, 371 U.S. at 479.

The scope of a warrantless search is "no narrower - and no broader – than the scope of a search authorized by a warrant supported by probable cause." *United States v. Ross*, 456 U.S. 798, 824 (1982). In the context of automobile searches, the Supreme Court has distinguished between (1) probable cause to search a particular compartment of an automobile, and (2) probable cause to conduct a general search that drugs are generally within a car. *Id.* In *Ross*, the Court explained:

> The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a

warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

*Id.* at 824. Therefore, if the police have probable cause to believe evidence can be found in one compartment of a vehicle, the Fourth Amendment limits the police search to that compartment.

The troopers' testimony illustrates that they believed marijuana had recently been smoked in the passenger compartment of the Camry. (J.A. 62, 64.) As the district court held, Ms. Wyatt's statements that she had smoked marijuana earlier in the day corroborated the troopers' belief that the odor of marijuana smoke was present. (J.A. 108.) This provided police with probable cause to believe that traces of smoked marijuana might still be present in the passenger compartment, or that additional marijuana might be in the interior of the car. But the government has failed to show that the officers detected a distinct odor of then-present marijuana from the trunk that would justify a search of that separate compartment. This set of facts must be distinguished from the trunk search this Court upheld in *United States v. Haynie*, 637 F.2d 227 (1980). In *Haynie*, the police believed that marijuana was in the trunk of the defendants' car because they "detected the odor emanating from the back of the [car] and observed marijuana on the rear bumper and on the ground underneath. 637 F.2d at 234. But it is one thing to assert

11

probable cause to conduct a trunk search based on a distinct odor of then-present marijuana. It is entirely another to assert probable cause for a trunk search based on an odor of smoke from marijuana recently consumed in the passenger compartment, where police seek other, additional marijuana in the trunk. Here, Troopers Treakle and Ticho had no basis to believe that a search of the trunk would reveal the source of the odor of marijuana smoke emanating from the Camry's passenger compartment.

This Court has repeatedly held, "if an officer smells marijuana upon a lawful traffic stop, the officer has probable cause to search both the suspect and the *passenger area* of the car." *United States v. Teran*, 496 F. App'x 287, 290 (4th Cir. 2012) (emphasis added); *see also United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) ("Once the car was properly stopped and the narcotics officers smelled marijuana, the narcotics officers properly conducted a search of the car."). This holding is based on the rule that "probable cause must be tailored to specific compartments and containers within an automobile." *United States v. Carter*, 300 F.3d 415, 422 (4th Cir. 2002). This Court has never held that the smell of marijuana smoke emanating from a car's passenger compartment alone provides justification to search its trunk. Much like here, the officer in *Carter* smelled the odor of marijuana emanating from the subject vehicle as he approached it, and the officer's drug detection canine later signaled the presence of drugs on the left side

of the vehicle.  *Id.* at 421.  The officer found the source of the odor after searching the passenger compartment, and he conducted an additional search of the vehicle's trunk.  *Id.*

This Court upheld the constitutionality of the second search, but explicitly rejected the government's contention that probable cause to search the passenger compartment provided the probable cause necessary to search the entire vehicle, including the trunk and a suitcase inside.  *Id.* at 422.  The *Carter* court reiterated the rule that probable cause to search a vehicle's passenger compartment does not automatically extend to the vehicle's trunk, because "probable cause must be tailored to specific compartments and containers within an automobile." *Id.*  As such, the officer's search of the trunk could be justified only because the dog "alerted in the precise vicinity of the trunk."  *Id.*

Here, although the odor of marijuana provided probable cause to search the interior of Mr. Champion's car, the police exceeded the permissible scope of the search by extending it to the vehicle's trunk.  (J.A. 25.)  Unlike in *Carter*, the troopers did not utilize a drug dog to sniff for drugs in Mr. Champion's car, though there was one on the scene, and there was no evidence that suggested marijuana would be in the trunk of the car.  (J.A 32.)  *See United States v. Haley*, 669 F.2d 201, 204 (4th Cir. 1982) (Winter, C.J., dissenting) ("Nowhere in the record does [the trooper] suggest that he opened the trunk because it smelled like marijuana.").

Although probable cause to search an entire vehicle permits police to search each compartment and container inside, probable cause to search one compartment does not provide probable cause to search a vehicle's locked trunk. *Acevedo*, 500 U.S. at 590; *Carter*, 300 F.3d at 422.

Other exceptions to the warrant requirement recognize that searches of locked trunks may be subject to different Fourth Amendment standards than searches of passenger compartments. *See, e.g.*, *Arizona v. Gant*, 556 U.S. 332, 343 (2009)(search incident to arrest is limited to passenger compartment of vehicle within arrestee's control).

The district court missed this analytical distinction in its conclusions of law, and incorrectly concluded that a circumstance permitting a search of the passenger compartment, the smell of marijuana emanating from the car's interior, also allowed the police to search the vehicle's trunk. (J.A. 108-09.) The court's conclusion that "[t]he traffic stop was now elevated to a drug stop and investigation" did nothing to relax the Fourth Amendment's requirement that probable cause be particularized to each compartment that is to be searched. (J.A. 108.) Neither officer suggested that the trunk was searched because it smelled of marijuana or any other indications that it contained drugs. If the police had obtained a warrant to search the passenger compartment based on the odor of marijuana, their search would have been confined to the area of the car that

probable cause justified investigating. *See Ross*, 456 U.S. 823 ("the scope of a warrantless search based on probable cause is no narrower -- and no broader -- than the scope of a search authorized by a warrant supported by probable cause.").

Of course, had the police searched the passenger compartment and discovered evidence that justified a search of the trunk, the analysis might be different. *See Kelly*, 592 F.3d 586, 590 (search upheld when officers searched passenger compartment, failed to find drugs, and then searched trunk of vehicle). But the troopers' search of the trunk, contemporaneous with the search of the passenger compartment, simply because "it was the next logical area to search," ran afoul of the Fourth Amendment requirement that searches must be limited in scope by particularized probable cause. (J.A. 55.)

In *United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010), this Court considered the legality of a trunk search involving facts that were less favorable to the defendant than those present here. In *Lynn*, troopers pulled over the defendants after observing them commit several evasive traffic violations. 592 F.3d at 582. When the trooper approached the stopped vehicle, he smelled marijuana and noticed that the defendants were nervous, and the defendants provided inconsistent stories regarding the purpose of their trip. *Id.* The police then searched the passenger compartment and trunk of the car and recovered "well over a hundred" empty glassine baggies in the back seat of the car; a half-smoked marijuana

15

cigarette on the driver's side floor; and an "overwhelming . . . chemical odor." *Id.* at 583. The Court expressly did not decide the question whether the police's simultaneous search of the trunk was supported by probable cause, because even if it were not, the paraphernalia found in the vehicle's passenger compartment would have provided probable cause to arrest the defendants and subsequently perform an inventory search of the vehicle. *Id.*

Here, there was no evidence that would lead a reasonable officer to develop the particularized suspicion -- that contraband would be found in the trunk of the vehicle -- required to conduct a lawful search of the trunk. To be sure, the police had probable cause to search the passenger compartment.
Trooper Treakle smelled marijuana smoke when he first approached the vehicle, and one of the vehicle's occupants admitted to smoking marijuana. (J.A. 62, 64.) But police did not obtain additional information allowing a search of the trunk. They failed to utilize their drug detection canine, and they failed to conduct a thorough search of the passenger compartment where the odor of smoke was detected. (J.A. 32, 103 at 22:05.) Nonetheless, the district court disregarded this Court's teachings in *Kelly*, *Lynn*, and *Carter*, and upheld the search, stating, "The Troopers have probable cause to search the trunk of the vehicle once they smell marijuana in the passenger compartment." (J.A. 108.)

Moreover, the district court's finding that Ms. Wyatt admitted "that each of the occupants had possessed and smoked marijuana in the car while on the highway" is irrelevant as to whether the police had probable cause to search the locked trunk. (J.A. 108.) The fact that a passenger admits smoking marijuana during a drive corroborates the officer's detection of the odor of marijuana, and may provide an independent basis to search the passenger compartment. But Ms. Wyatt's admission was cumulative, and unless the officer believed she was smoking in the trunk of the vehicle, it did nothing to strengthen the officers' basis for searching the trunk.

In summary, although probable cause that generally implicates an entire car may support a search of the entire car, when probable cause is limited to a specific location inside the vehicle the police may search only that location. The probable cause in this case was limited to the passenger compartment. Therefore, in the absence of any other evidence directly or indirectly pointing to the presence of drugs elsewhere in the vehicle, the police were not justified in searching the Camry's locked trunk. By allowing evidence that marijuana was smoked in the passenger compartment of the car to justify a warrantless search of the vehicle's trunk, the district court committed an error of law, and it set a probable cause standard substantially lower than that required by the Fourth Amendment.

**CONCLUSION**

For the reasons stated, this Court should reverse the district court's order denying Mr. Champion's motion to suppress evidence, vacate the judgment, and remand for further proceedings.

**STATEMENT OF WHY ORAL ARGUMENT SHOULD BE HEARD**

The Court should hear oral argument because this appeal satisfies none of the three criteria for proceeding without it. *See* Fed. R. App. P. 34(a)(2). The appeal is not frivolous. *See* Rule 34(a)(2)(A). As detailed above, the dispositive issue of whether an odor of marijuana smoke from a car's passenger compartment justifies a search of the car's trunk has not been authoritatively decided by this Court. *See* Rule 34(a)(2)(B). Finally, because the issue requires the Court to further clarify its past precedent and may put the Court into conflict with other Circuits, oral argument would significantly aid the Court's resolution of this important issue. *See* 34(a)(2)(C).

Respectfully,

ANTHONY T. CHAMPION
DEFENDANT-APPELLANT

/s/ John S. Davis, V
John S. Davis, V
Daniel P. Watkins
200 South 10th Street
Richmond, VA 23218
(804) 420-6000

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains 4,171 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ John S. Davis, V
John S. Davis, V

Dated: June 5, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 5, 2014, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF System, which will send notice of such filing

to the following registered CM/ECF users:

Stephen W. Miller
Assistant U.S. Attorney
OFFICE OF THE
  UNITED STATES ATTORNEY
Eastern District of Virginia
Main Street Centre
Suite 1800
600 East Main Street
Richmond, VA  23219

Counsel for Appellee
  United States of America

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

*/s/ Tracy Moore Stuckey*
Tracy Moore Stuckey
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219